STEWART, J.
|, The defendant, Gregory Jones, was charged with aggravated rape, found guilty as charged, and given the statutorily mandated sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. The defendant now appeals, urging three assignments of error. For the reasons stated herein, we affirm the defendant’s conviction and sentence.
Facts
The defendant and the victim began dating in 2003, when the victim was 16 years old. The relationship ended shortly before the victim’s 18th birthday. The victim later testified that the defendant had raped her on her 18th birthday, but she did not press charges at that time. The defendant’s parents convinced her not to press charges by imploring that they had lost one son already and that they were going to get help for the defendant.
The victim remained in a relationship with the defendant for a short time, later testifying that she had hoped he would “get better.” Neither the defendant nor his parents sought help for the defendant. After the relationship ended, the defendant continued to contact the victim. He broke into the victim’s home on several occasions and went to the victim’s workplace. The victim told the defendant not to contact her and eventually obtained a restraining order against the defendant. The defendant refused to follow it.
The victim had two daughters at the time of trial. The older daughter was 4 years old. The younger daughter had been born prematurely on January 25, 2007, and was still in LSU’s Neonatal Intensive Care Unit six | {¡weeks later, at the time the instant offense occurred.[1] The victim had obtained the restraining order against the defendant prior to the second daughter’s birth.
At approximately 9:00 p.m. on March 7, 2007, the victim was lying on the sofa watching television with her 4-year-old daughter when she heard her back door open. The defendant came in yelling and cursing, angrily asking why the victim refused to speak to him. The victim instructed her little girl to “put her head down in the couch.”
The defendant pulled the victim by her hair and began punching her, while pulling her into the bedroom. The defendant then inserted his fingers into the victim’s vagina and began scraping her insides with his fingernails. The victim screamed at him to stop and tried to fight back. The defendant raped the victim repeatedly, intermittently punching her face and upper body *847 and scraping her insides with his fingernails. Afterward, the defendant pulled the victim into the bathroom and pushed her into the tub. He proceeded to clean himself with a towel and washed her with soap. The defendant instructed her not to tell anybody and not to call the police.
After the defendant left, the victim called her mother, who then called the police. The police transported the victim to the DeSoto Regional Hospital’s emergency room.
| ¡¡Detective Ronnie Shane Adams of the Mansfield Police Department received the call on March 7, 2007, regarding the defendant’s rape of the victim. Detective Adams had dealt with the victim and defendant on a regular basis, and had taken the earlier complaint of rape when the victim was 18. Detective Adams responded to DeSoto Regional Hospital to make contact with the victim. Detective Adams immediately noticed that the left side of the victim’s face was swollen, her left eye was swollen shut, and her eyelid was bleeding. Sergeant Johnny Zamarripa, who had responded to the scene, later testified that the victim’s clothes were torn, that she was distraught and crying, and that she had been beaten.
Tabitha Ward (“Ward”), a Registered Nurse (RN) and certified Sexual Assault Nurse Examiner (SANE), performed a sex crime examination on the victim when the victim arrived at the emergency room. Ward testified that 17 to 19 samples were taken from the victim, including hair, saliva, and pubic hair samples. The examination also included pictures of any marks that did not appear to be consistent with a regular skin tone, including bruising or tears. Ward testified that she was unable to complete the full examination of the victim because of the victim’s injuries. The victim’s most noticeable injury, in Ward’s estimation, was the avulsion, or digging out of the skin, that had occurred on the victim’s “vestibule,” or the area between the vaginal opening and the labia. The area at the site of the avulsion was bright red and swollen, to the extent that Ward was unable to insert the speculum in order to complete the examination.
|4The examination also included the application of Touline blue dye, which is a dye specially designed to uptake areas of friction. Ward testified that the uptake of the dye indicated friction and tears that were inconsistent with consensual sexual intercourse. Ward also testified that the injuries noted during the examination were not consistent with having given birth, because of the length of time between the birth, which occurred on January 25, 2007, and the examination, which occurred on March 8, 2007.
Other injuries to the victim included facial abrasions and bruises, as well as multiple abrasions, scratches, and bruises on the victim’s body. The victim also had a circular area on the back of her left calf which resembled a bite mark. Throughout the exam, the victim was tearful, quiet, and avoided eye contact. Ward stated that the victim was in such great pain that four people were needed to restrain her in order to apply local anesthetic.
Ward testified that the DNA samples taken from the victim’s vagina and from a bite mark/breast swab were consistent with the defendant’s DNA. Ward testified that the probability of the DNA being consistent with a random person pulled from the population was 1 in 75.1 trillion.
The defendant was charged with aggravated rape by bill of indictment on July 9, 2007. On April 9, 2008, after a jury trial, the defendant was found guilty as charged. On June 19, 2008, the defendant was sentenced to life in prison without possibility of parole, probation, or suspension of sen *848 tence. The defendant now appeals, urging three assignments of error.
|,LAW & DISCUSSION
In the defendant’s first assignment of error, he argues that the evidence is insufficient to support the verdict of guilty of aggravated rape. More specifically, the defendant argues that the no evidence was presented at trial which proved that he forced the victim to have sex with him.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This standard, now legislatively embodied in La. C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, unit denied, 2002-3090 (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When 16the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Parker, 42,311 (La.App. 2d Cir.8/15/07), 963 So.2d 497; State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,981 (La.App. 2d Cir.5/9/07), 956 So.2d 769; State v. Burd, 40,480 (La.App. 2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35. This rule is applicable to the testimony of victims of sexual assault. State v. Robinson, 36,147 (La.App. 2d Cir.12/11/02), 833 So.2d 1207; State v. Ponsell, 33,543 (La.App. 2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490. See also State v. Simpson, 39,268 (La.App. 2d Cir.1/26/05), 892 So.2d 694. Indeed, such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Robinson, supra; State v. Ponsell, supra. See also State v. Johnson, *849 96-0950 (La.App. 4th Cir.8/20/97), 706 So.2d 468, writ denied, 1998-0617 (La.7/2/98), 724 So.2d 203, cert. denied, 525 U.S. 1152, 119 S.Ct. 1054, 143 L.Ed.2d 60 (1999).
The defendant argues that the ease rested on circumstantial evidence and that the State did not exclude every reasonable hypothesis of innocence. He asserts that the victim fabricated this rape allegation and that the sex that occurred on March 7, 2007, was consensual. The jury reasonably rejected these hypotheses of innocence.
The victim testified that the defendant broke into her house, beat her, and raped her. She screamed for him to stop and tried to fight back. After the sexual act occurred, the defendant put the victim in the tub and washed her. He then instructed her not to tell anybody and not to call the police. These facts clearly indicate that this was not consensual sex.
The victim’s testimony that the defendant beat and raped her was consistent with the observations of the police officers and examining nurse. The testimony and evidence presented in this case were sufficient to find the defendant guilty of the crime of aggravated rape. Therefore, this assignment of error has no merit.
The defendant also alleges two additional assignments of error. In the second assignment, the defendant asserts that the trial court erred in | ¡¡denying his motion to dismiss.[2] In his third and final assignment of error, he alleges that the trial court erred in denying his motion for post-verdict judgment of acquittal. However, the defendant only briefed the insufficiency of the evidence argument, noting that “the appellant’s assignments are argued jointly, as they are interrelated.”
URCA Rule 2-12.4 provides in pertinent part:
“All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.”
Thus, these two assignments of error are deemed abandoned.
CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. The defendant is not the father of either of the victim’s children.

. In addition to the URCA Rule 2-12.4 violation, the defendant's second assignment of error is meritless, as the trial court does not possess the authority to dismiss charges. La. C.Cr.P. art. 691, etseq.